# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**No. 21-1106**

**September Term, 2021**

FILED ON: JULY 15, 2022

PEREGRINE OIL & GAS II, LLC,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

TEXAS EASTERN TRANSMISSION, LP,
INTERVENOR

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

Before: HENDERSON and WALKER, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

## J U D G M E N T

This case was considered on the record from the Federal Energy Regulatory Commission and on the briefs and arguments of the parties. We fully considered the issues and determined that a published opinion is unnecessary. *See* D.C. Cir. R. 36(d).

We **DENY** in part and **DISMISS** in part the petition for review.

\* \* \*

Peregrine Oil & Gas II is an oil and natural-gas producer that operates in the Gulf of Mexico. From beneath the seafloor, it extracts a mix of crude oil, natural gas, and water. That mixture flows as one through an initial set of pipelines, but eventually the gas must be separated out. Peregrine sells that gas to a buyer. The buyer then relies on a second set of pipelines to transport the gas.

Texas Eastern Transmission owns some of those pipelines that Peregrine's buyer uses after purchasing the gas from Peregrine. In 2014 and 2016, one of the Texas Eastern pipelines leaked, resulting in temporary pipeline shutdowns. During those shutdowns, Peregrine had to stop its oil

and gas production. After the 2016 shutdown, without filing a new rate with the Federal Energy Regulatory Commission, Texas Eastern entered into a Reimbursement Agreement with a group of oil and gas producers to compensate Texas Eastern for the costs of repairing its pipeline. Peregrine was not party to that Reimbursement Agreement and paid no money to Texas Eastern for the repairs.

Nevertheless, Peregrine filed a complaint with FERC. It claimed that Texas Eastern did not act quickly enough to repair the pipeline leaks and instead leveraged the shutdowns to coerce oil and gas producers into funding the repairs. Peregrine also claimed that the Reimbursement Agreement should have been filed with FERC and then rejected by FERC as illegal. *See* 15 U.S.C. § 717c(c) (requiring companies that transport natural gas to file with FERC "all contracts which in any manner affect or relate to . . . charges" for transportation of natural gas).

FERC scheduled an evidentiary hearing before an administrative law judge. The ALJ heard seven days of testimony. She found that Texas Eastern responded reasonably to its pipeline leaks and that there had been "no need" for Texas Eastern "to file the Reimbursement Agreement" with FERC. JA 961.[1]

Peregrine challenged that decision before FERC, which affirmed the initial decision with modifications and deemed the rehearing request denied. One of FERC's modifications was to decline to decide whether the Reimbursement Agreement should have been filed because it found that Peregrine was not entitled to damages either way.

Peregrine now claims that FERC's decision was arbitrary and capricious. *See* 5 U.S.C. § 706(2)(A).

I

To have standing, Peregrine "must have suffered an injury in fact" that is "fairly traceable

---

[1] For a flavor of the ALJ's findings, consider her assessment of a key witness for Peregrine:

> From the pre-filed, written testimony, it is unclear whether Mr. Timothy is presented as an expert witness or fact witness. Post-hearing and after reviewing all the evidence presented in this proceeding, my conclusion is that he is neither. Mr. Timothy has limited expertise. He is not an engineer and does not hold an engineering degree, although he seems to have supervisory experience in various capacities related to pipeline or platform operations. However, his credibility is significantly undermined by his lack of attention to detail, confusion about simple concepts, and contradictions of his own testimony displayed during cross-examination. His credibility as a fact witness is similarly undermined by his live testimony, where he admits that he has little firsthand knowledge of the events in 2013, 2014, and 2016. Mr. Timothy testifies that he was not involved in the 2013 Repair and did not advise any of his clients at that time. He further testifies that "all of [his] knowledge is from this case." The bulk of his testimony consists of conclusory statements and conjecture unsupported by record evidence. For these reasons, I give little weight to Mr. Timothy's opinions and conclusions. I rely on Mr. Timothy's testimony to the extent he unwittingly corroborates other witnesses.

JA 944 n. 71 (citations omitted).

to the challenged action" and "likely" to "be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

Peregrine does not have standing to argue that Texas Eastern should have filed with FERC the Reimbursement Agreement between Texas Eastern and a group of oil and gas producers that did not include Peregrine. Peregrine never paid Texas Eastern for the pipeline repairs covered by that Reimbursement Agreement. Instead, Peregrine's only payment was to a producer under a separate contract between Peregrine and that producer. That contract required Peregrine to pay the producer for part of what the producer ended up paying Texas Eastern under the Reimbursement Agreement.

Peregrine says it has standing because it was injured by its payment to that other producer. But Peregrine did not provide this Court with sufficient detail about the terms of its contract with that producer. Peregrine may well have caused its own injury by voluntarily contracting to reimburse the other producer for costs imposed on the producer by a Reimbursement Agreement that Peregrine considered illegal. Peregrine has thus failed to "do the necessary work of explaining and substantiating claims of standing that are not self-evident." *Utility Workers Union of America Local 464 v. FERC*, 896 F.3d 573, 577 (D.C. Cir. 2018) (cleaned up).

II

We now turn to Texas Eastern's allegedly slow and coercive response to its pipeline leaks. Peregrine argues that FERC should not have considered any of the ALJ's findings on that issue because at various points throughout her decision, the ALJ incorrectly referred to the burden of proof as "beyond" a preponderance of the evidence rather than "by" a preponderance of the evidence.

FERC reasonably determined that the ALJ did not actually misapply the burden of proof, despite overstating it at times. The ALJ correctly described the preponderance standard in the dedicated "Burden of Proof" section. FERC also reasonably determined that whatever gap exists between "beyond" a preponderance and "by" a preponderance, that gap didn't matter in a case that was "not a close call with respect to the issue of Peregrine's theory of the case and the credibility of the evidence and witnesses supporting the case." JA 1457 ¶ 27.

Peregrine also argues that the standard of care by which the ALJ judged Texas Eastern's actions somehow betrayed that she used a heightened burden of proof. But because Peregrine did not advance that argument with FERC in its request for rehearing, Peregrine has forfeited it. *See* 15 U.S.C. § 717r(b) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure so to do.").

III

Peregrine next argues that it was arbitrary and capricious for FERC to determine that Texas

3

Eastern reasonably responded to the leaks on its pipeline. But its arguments merely amount to a request to relitigate FERC's factual findings. This Court's "limited role is to ensure that the Commission engaged in reasoned decisionmaking." *FERC v. Electric Power Supply Association*, 577 U.S. 260, 295 (2016)). Although Peregrine (unsurprisingly) takes a different view of the evidence than did FERC, none of Peregrine's factual contentions casts doubt on the reasonableness of FERC's explanations. *See Fort Dearborn Co. v. NLRB*, 827 F.3d 1067, 1072 (D.C. Cir. 2016) ("The court accepts the ALJ's credibility determinations as adopted by the Board, unless they are patently unsupportable." (cleaned up)). In particular, we need not decide whether Peregrine is right about a handful of supposed inaccuracies in the ALJ's decision because those alleged inaccuracies are too minor to make FERC's ultimate conclusion unreasonable.

IV

Last, Peregrine separately argues that it was arbitrary and capricious for FERC to decline to award Peregrine's requested damages. This argument relies on Peregrine's attempt to relitigate the facts. The arguments are equally unconvincing a second time.

For these reasons, we **DISMISS** in part and **DENY** in part the petition for review.

\*     \*     \*

This disposition is unpublished. *See* D.C. Cir. R. 36(d). We direct the Clerk to withhold this mandate until seven days after resolution of a timely petition for panel or en banc rehearing. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**<u>Per Curiam</u>**

FOR THE COURT:
Mark J. Langer, Clerk

BY:     /s/
          Daniel J. Reidy
          Deputy Clerk

4